# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | |
|---|---|
| H&R BLOCK, INC.; HRB DIGITAL LLC; HRB TAX GROUP, INC., | |
| Plaintiffs, | |
| v. | Case No. 4:24-cv-00198-HFS |
| JAY L. HIMES, IN HIS OFFICIAL CAPACITY AS FEDERAL TRADE COMMISSION ADMINISTRATIVE LAW JUDGE; LINA M. KHAN, REBECCA KELLY SLAUGHTER, ALVARO M. BEDOYA, ANDREW N. FERGUSON, AND MELISSA HOLYOAK, IN THEIR OFFICIAL CAPACITIES AS FEDERAL TRADE COMMISSIONERS; UNITED STATES OF AMERICA, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## SUGGESTIONS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ............................................................................................. 1

II.    STATEMENT OF FACTS ............................................................................... 2

III.   ARGUMENT ..................................................................................................... 3

       A.     H&R BLOCK IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM ................... 3

              1.     Article II Of The Constitution Imposes A General Rule That The
                     President Must Have Unrestricted Ability To Remove Executive
                     Officers ............................................................................................... 3

              2.     The Supreme Court Has Permitted Only Two Narrow Exceptions
                     To Article II's Requirement Of Unrestricted Removal ........................... 4

              3.     The FTC's ALJs Are Officers That Fit Neither Of The Narrow
                     Exceptions To Article II's General Rule Of Unrestricted Removal ......... 6

              4.     At Minimum, ALJs' Multiple Levels Of Stringent Removal
                     Protections Violate Article II ................................................................ 8

              5.     This Court May Not And Should Not Recognize A New Exception
                     To The President's Removal Power For ALJs ...................................... 10

              6.     The Proper Remedy Here Is To Enjoin The ALJ's Participation
                     Because The Unconstitutional Removal Restrictions Are Not
                     Severable ............................................................................................. 12

       B.     THE EQUITABLE FACTORS FOR A PRELIMINARY INJUNCTION FAVOR H&R
              BLOCK ....................................................................................................... 16

IV.    CONCLUSION ............................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abrams v. SSA,*
    703 F.3d 538 (Fed. Cir. 2012)...................................................................................8

*Alaska Airlines, Inc. v. Brock,*
    480 U.S. 678 (1987)...................................................................................12, 15

*Axon Enter., Inc. v. FTC,*
    143 S. Ct. 890 (2023)...................................................................................2, 16

*Ayotte v. Planned Parenthood of N. New England,*
    546 U.S. 320 (2006)...................................................................................13

*Butz v. Economou,*
    438 U.S. 478 (1978)...................................................................................13, 14

*City of Arlington v. FCC,*
    569 U.S. 290 (2013)...................................................................................7, 10, 11

*Collins v. Yellen,*
    141 S. Ct. 1761 (2021)...................................................................................5, 15

*Dakotans for Health v. Noem,*
    52 F.4th 381 (8th Cir. 2022) ...................................................................................3

*Decker Coal Co. v. Pehringer,*
    8 F.4th 1123 (9th Cir. 2021) ...................................................................................10

*Dep't of Labor v. Avery,*
    120 M.S.P.R. 150 (2013) ...................................................................................8

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010)................................................................................... *passim*

*Humphrey's Executor v. United States,*
    295 U.S. 602 (1935)................................................................................... *passim*

*In re Axon Enter., Inc.,*
    2020 WL 5406806 (F.T.C. Sept. 3, 2020) ................................................................................... *passim*

*In re H&R Block Inc. et al.,*
    No. 9427 (F.T.C.)...................................................................................2

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022) ...................................................................................1, 9

*League of Women Voters of the U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ............................................................16

*Lucia v. SEC*,
    585 U.S. 237 (2018)............................................................ *passim*

*Morrison v. Olson*,
    487 U.S. 654 (1988)............................................................ *passim*

*Murphy v. NCAA*,
    584 U.S. 453 (2018)..........................................................12, 15

*Myers v. United States*,
    272 U.S. 52 (1926)..............................................................4, 11

*NLRB v. Bell Aerospace Co.*,
    416 U.S. 267 (1974)..................................................................7

*Phelps-Roper v. Nixon*,
    545 F.3d 685 (8th Cir. 2008) .................................................16

*Ramspeck v. Fed. Trial Examiners Conf.*,
    345 U.S. 128 (1953)............................................1, 13, 14, 15

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020)..................................................... *passim*

*SSA v. Brennan*,
    27 M.S.P.R. 242 (1985) ...........................................................8

*SSA v. Levinson*,
    2023 M.S.P.B. 20 (July 12, 2023)..........................................9

*State Oil Co. v. Khan*,
    522 U.S. 3 (1997)..................................................................10

*United States v. Arthrex, Inc.*,
    141 S. Ct. 1970 (2021)..................................................... *passim*

*United States v. Perkins*,
    116 U.S. 483 (1886)......................................................... *passim*

*Wiener v. United States*,
    357 U.S. 349 (1958)........................................5, 6, 11, 15

**CONSTITUTIONAL AND STATUTORY AUTHORITIES**

U.S. Const. Article II, § 1 .........................................................3

U.S. Const. Article II, § 3 .........................................................3

5 U.S.C. § 45.............................................................................2

5 U.S.C. § 556.................................................................................................2, 15

5 U.S.C. § 557.................................................................................................2, 15

5 U.S.C. § 632 (1946)...........................................................................................13

5 U.S.C. § 1202.......................................................................................1, 3, 9, 14

5 U.S.C. § 7521.......................................................................................1, 3, 8, 14

15 U.S.C. § 41................................................................................................1, 3, 9

15 U.S.C. § 45.................................................................................................2, 16

Administrative Procedure Act, Pub. L. No. 79-404, 60 Stat. 237 (1946).................13

Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (1978) ............14

**OTHER AUTHORITIES**

5 C.F.R. § 1201.1...................................................................................................15

5 C.F.R. § 1201.2...................................................................................................15

5 C.F.R. § 1201.3...................................................................................................15

16 C.F.R. pt. 3.........................................................................................................2

16 C.F.R. § 0.14......................................................................................................2

16 C.F.R. § 3.22......................................................................................................6

16 C.F.R. § 3.52......................................................................................................6

16 C.F.R. § 3.53......................................................................................................6

16 C.F.R. § 3.54......................................................................................................6

Hearings on H.R. 11280 Before the H. Comm. on Post Off. & Civ. Serv., 95th
    Cong. 824 (1978)...........................................................................................14

Harold J. Krent, *Presidential Control of Adjudication Within The Executive
    Branch*, 65 Case W. Reserve L. Rev. 1083 (2015)..........................................10

Sec'y of Educ. Review of ALJ Decisions, 15 Op. O.L.C. 8 (1991) .........................7, 10

S. Rep. No. 79-752 (1945).......................................................................................14

-iv-

# I. INTRODUCTION

H&R Block Inc., HRB Digital LCC, and HRB Tax Group, Inc. (collectively, H&R Block) are being subjected to proceedings before an Administrative Law Judge (ALJ) of the Federal Trade Commission who is triply insulated from removal by the President. The ALJ may not be removed by the FTC except "for good cause established and determined by the Merit Systems Protection Board," 5 U.S.C. § 7521(a); and in turn, both MSPB members and FTC Commissioners may not be removed by the President except "for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202; 15 U.S.C. § 41; *Humphrey's Executor v. United States*, 295 U.S. 602, 619, 632 (1935).

This scheme plainly violates Article II of the Constitution. "The President's power to remove" inferior officers in an executive agency must be "unrestricted" to ensure their accountability to the public, with one narrow exception allowing modest removal protections for those "with limited duties and no policymaking or administrative authority." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191, 2198-2200 (2020). The FTC's ALJs fall well outside that exception. They hold continuing positions with wide-ranging duties, not temporary or minor roles. *See generally Lucia v. SEC*, 585 U.S. 237 (2018). And even if some level of removal protection were permissible, their "multilevel protection" is not. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 484 (2010). The Fifth Circuit thus held the SEC's analogous ALJ scheme invalid. *See Jarkesy v. SEC*, 34 F.4th 446, 463-65 (5th Cir. 2022), *cert. granted*, No. 22-859 (U.S.).

The remedy for this unlawful scheme is also plain: The Court should enjoin the unaccountable ALJ's participation in the FTC's adjudication. While some Article II violations can be cured by severing the removal restriction, this one cannot. Severance would make ALJs subservient to the agency, which is the *precise problem* that Congress designed this scheme to fix. *See Ramspeck v. Fed. Trial Examiners Conf.*, 345 U.S. 128, 130-32 (1953).

Finally, the equitable factors decisively favor a preliminary injunction. H&R Block faces the "here-and-now injury" of being forced to proceed before "an unaccountable ALJ," which "cannot be undone" later. *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 903-04 (2023). On the other side of the scale, the Government has no cognizable interest in pursuing an unconstitutional adjudication, and the FTC could still vindicate its law-enforcement interests by conducting the adjudication itself. *See* 15 U.S.C. § 45(b); 5 U.S.C. §§ 556(b)(1), 557(b).

## II.    STATEMENT OF FACTS

On February 23, 2024, the FTC issued an administrative complaint charging H&R Block with committing unfair or deceptive acts or practices, in violation of 5 U.S.C. § 45(a), in connection with the design and advertising of certain online tax-preparation products. *See In re H&R Block Inc. et al.*, No. 9427, https://www.ftc.gov/legal-library/browse/cases-proceedings/hr-block-matter. The FTC is authorized to itself conduct an adjudication of such charges and order that a person charged cease and desist from any violations found. 5 U.S.C. § 45(b). But the FTC has delegated authority to ALJs to take evidence and make initial findings of fact and conclusions of law. *See* 5 U.S.C. §§ 556(b)(3), 557(b); 16 C.F.R. § 0.14. The administrative complaint thus set a hearing before an ALJ for October 23, 2024, and an order was issued on March 12, 2024, designating ALJ Himes to perform all duties authorized by law in connection with the hearing. An FTC ALJ's broad powers in shaping the evidentiary record and conducting the hearing are akin to those of a federal district judge. *See generally* 16 C.F.R. Part 3; *In re Axon Enter., Inc.*, 2020 WL 5406806, at *3 (F.T.C. Sept. 3, 2020) (an ALJ's "position is 'functionally comparable to that of a judge'"); *Lucia*, 585 U.S. at 247-51 (similarly describing the analogous powers of SEC ALJs).

On March 12, 2024, H&R Block timely answered the administrative complaint, denying all of the FTC's claims. On March 20, 2024, H&R Block filed its Complaint in this Court, alleging

2

that the ALJ's participation in the FTC adjudication violates Article II of the Constitution. *See* Compl. ¶¶ 1-8, 30-33. H&R Block now promptly seeks a preliminary injunction to prevent the irreparable harm of being subjected to proceedings before an unconstitutionally insulated ALJ.

## III.   ARGUMENT

A party seeking a preliminary injunction "must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest." *Dakotans for Health v. Noem*, 52 F.4th 381, 388 (8th Cir. 2022) (cleaned up). Those factors are easily satisfied here.

### A.   H&R BLOCK IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM

By intent and design, ALJs are very hard to fire. Agency heads may remove them "only for good cause established and determined by the [MSPB]." 5 U.S.C. § 7521(a). In turn, the President may not remove either MSPB members or FTC Commissioners except "for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202(d); 15 U.S.C. § 41. This statutory scheme is irreconcilable with the Constitution and Supreme Court precedent.

#### 1.   Article II Of The Constitution Imposes A General Rule That The President Must Have Unrestricted Ability To Remove Executive Officers

The Constitution vests the "entire" power to execute federal law in the President "alone," and it imposes on him a corresponding duty to "take Care that the Laws be faithfully executed." *Seila Law*, 140 S. Ct. at 2197 (citing U.S. Const. art. II, §§ 1, 3). That enormous and exclusive mandate requires that he have subordinates to assist him and the ability to supervise them. *Id.*

Supervision "generally includes the ability to remove executive officials," because it is only the person who "can remove" such officials that they "must fear and, in the performance of their functions, obey." *Id.* (cleaned up). This removal power is necessary for the President to be "fully accountable for discharging his own responsibilities," *Free Enter. Fund*, 561 U.S. at 514,

through "a clear and effective chain of command," *id.* at 498. The "general rule" is thus that the President has "unrestricted removal power" over executive officers. *Seila Law*, 140 S. Ct. at 2198.

The Constitution has been understood this way "[s]ince 1789*." Id.* In creating the seminal executive departments, the First Congress settled that the President must have the "power to remove—and thus supervise—those who wield executive power on his behalf." *Id.* at 2191-92. And nearly a century ago, Chief Justice Taft confirmed in a landmark Supreme Court opinion that the President's "control of those executing the laws" includes the "essential" power of "removal." *Myers v. United States*, 272 U.S. 52, 117, 163-64 (1926).

### 2. The Supreme Court Has Permitted Only Two Narrow Exceptions To Article II's Requirement Of Unrestricted Removal

The Supreme Court has "recognized only two exceptions to the President's unrestricted removal power." *Seila Law*, 140 S. Ct. at 2192. One applies to certain principal officers, whose direct superior is the President; the other to certain inferior officers, who are "directed and supervised at some level by" principal officers. *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1980 (2021). The two exceptions are "'the outermost constitutional limits of permissible congressional restrictions on the President's removal power.'" *Seila Law*, 140 S. Ct. at 2199-2200.

*First*, as to principal officers, the Supreme Court has allowed Congress to limit the President's removal power only for those who head "multimember expert agencies that do not wield substantial executive power." *Id.* at 2199-2200. In *Humphrey's Executor*, the Court considered the five-member FTC, which it saw as a nonpartisan "administrative body" that exercised "quasi judicial and quasi legislative" functions, but "no part of the executive power." 295 U.S. at 624. On that understanding, the Court upheld the provision prohibiting the President from removing FTC Commissioners absent "inefficiency, neglect of duty, or malfeasance in

office." *Id.* at 620, 628; *see also Wiener v. United States*, 357 U.S. 349, 350, 354-56 (1958) (invoking *Humphrey's Executor* to infer similar removal restriction for War Claims Commission).

The Supreme Court, however, has rejected restrictions on the removal of principal officers that do not fit within the mold of *Humphrey's Executor*. Twice in the past four years, the Court invalidated removal restrictions that insulated single-headed agencies wielding substantial executive powers. *Seila Law*, 140 S. Ct. at 2192 (CFPB); *Collins v. Yellen*, 141 S. Ct. 1761, 1783-84 (2021) (FHFA). Moreover, the Court has pointedly noted that the rationale of *Humphrey's Executor* was repudiated by later precedent. *Seila Law*, 140 S. Ct. at 2198 n.2.

*Second*, as to inferior officers, the Supreme Court has allowed Congress to restrict the President's removal power only for those "with limited duties and no policymaking or administrative authority." *Id.* at 2200. In the late 19th century, the Court upheld a rule that prevented the Secretary of the Navy from discharging a low-ranking cadet-engineer during peacetime without first finding misconduct or convening a court-martial. *United States v. Perkins*, 116 U.S. 483, 483-85 (1886). And a century later, the Court upheld a "good cause" restriction on the Attorney General's ability to remove an independent counsel specially appointed to investigate and prosecute, pursuant to DOJ policy, certain crimes by high-ranking officials. *Morrison v. Olson*, 487 U.S. 654, 691-92 (1988).

Not only did the offices at issue have limited scope, but the removal restrictions were relatively modest. In *Morrison*, the Court observed that the Attorney General could remove the counsel for any misconduct. *Id.* at 692; *see also id.* at 724 n.4 (Scalia, J., dissenting) (explaining "*cause*" would "include, of course, the failure to accept supervision"). And in *Perkins*, although the Court did not opine on the standard for misconduct—because the cadet-engineer had not

engaged in *any* wrongdoing—the military context made clear that insubordination would be an offense punishable by removal (or worse). *Cf. Free Enter. Fund*, 561 U.S. at 507.

Here too, the Supreme Court has rejected removal restrictions for inferior officers that exceed the "limited restrictions" in *Perkins* and *Morrison*. *Id.* at 495. In *Free Enterprise Fund*, the Court addressed inferior officers shielded by two levels of removal protections: Public Company Accounting Oversight Board (PCAOB) members could be removed by the SEC only in extreme situations, and SEC Commissioners in turn were assumed to be protected from removal under *Wiener*. *Id.* at 486-87. The Court held that this "added layer of tenure protection" unconstitutionally withdrew "from the President any decision" on whether there was cause to remove a PCAOB member, creating "a Board that is not accountable to the President, and a President who is not responsible for the Board." *Id.* at 495-96.

### 3. The FTC's ALJs Are Officers That Fit Neither Of The Narrow Exceptions To Article II's General Rule Of Unrestricted Removal

It is undisputed that FTC ALJs are officers, because they possess continuing positions and exercise significant, important discretion in overseeing adversarial proceedings. *See Lucia*, 585 U.S. at 247-51 (so holding for SEC ALJs); *Axon*, 2020 WL 5406806, at *3 n.7 (the FTC conceding that *Lucia* applies to its ALJs). Thus, under the legal framework established in *Seila Law*, the threshold inquiry is whether they can be protected from Presidential removal *at all*, under either of the exceptions to the rule of at-will removal. And it is clear that the *Humphrey's Executor* exception for *principal* officers heading certain multimember agencies does not apply; FTC ALJs are *inferior* officers, as "superior executive officer[s]" (*i.e.*, the FTC Commissioners) may generally "review" their actions. *See Arthrex*, 141 S. Ct. at 1981; 16 C.F.R. §§ 3.22, 3.52-54.

So the real question is whether the *Morrison/Perkins* exception applies: Do ALJs exercise "limited duties *and* no policymaking *or* administrative authority"? *Seila Law*, 140 S. Ct. at 2199-2200 (emphases added). On every prong, the answer is "no."

ALJs' duties are not limited in the same durational or substantive manner as the officers' duties in *Morrison* and *Perkins*—or in any material sense. ALJs serve indefinitely, unlike the independent counsel's temporary mandate in *Morrison* to fulfill a "single task." 487 U.S. at 672. And they wield power over ordinary citizens, whereas the counsel's power was "trained inward to high-ranking Governmental actors identified by others." *Seila Law*, 140 S. Ct. at 2200. Likewise, the cadet-engineer in *Perkins* was near the bottom of the command chain and primarily responsible for carrying out superiors' instructions, *see* 116 U.S. at 483, while ALJs wield "significant discretion" and powerful "tools" in conducting "adversarial hearings," *see Lucia*, 585 U.S. at 238.

Relatedly, ALJs exercise policymaking authority. The Department of Justice has long recognized that ALJs "determine, on a case-by-case basis, the policy of an executive branch agency." Sec'y of Educ. Review of ALJ Decisions, 15 Op. O.L.C. 8, 15 (1991). Nor can that plausibly be disputed. Through adjudications, ALJs necessarily "fill statutory and regulatory interstices comprehensively with [their] own policy judgments." *Id.* at 14; *see City of Arlington v. FCC*, 569 U.S. 290, 304-05 (2013) (noting that judges of all types decide "how best to construe an ambiguous term in light of competing policy interests"). After all, it is black-letter administrative law that agencies can use a party-specific adjudication, just like general rulemaking, to "formulat[e] … agency policies" and "promulgate a new standard that w[ill] govern future conduct." *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 292-94 (1974).

At the very least, *Administrative* Law Judges possess *administrative* authority. They are inferior officers exercising "significant authority" under federal law *because of* the myriad ways

they "critically shape the administrative record." *Lucia*, 585 U.S. at 245, 248. ALJs have earned their name; if what they do is not exercising administrative authority, then nothing is.

In sum, ALJs do not fall within the *Perkins*/*Morrison* exception. Article II's "general rule" of "unrestricted removal power" thus applies. *Seila Law*, 140 S. Ct. at 2198.

### 4. At Minimum, ALJs' Multiple Levels Of Stringent Removal Protections Violate Article II

Even if Congress could give ALJs *some* type of tenure protection, its chosen scheme goes too far. ALJs have atypically robust removal protections for inferior officers, far exceeding those tolerated in *Perkins* and *Morrison*. Compounding the problem, the President lacks at-will removal power over the MSPB members and FTC Commissioners whose assent is needed to remove the FTC's ALJs—a triple-insulated system that violates *Free Enterprise Fund*.

Starting with the first layer, the "good cause" standard for ALJ removal "established" by the MSPB goes well beyond what Supreme Court precedent permits. 5 U.S.C. § 7521(a). The MSPB's "baseline for evaluating good cause in any action against an ALJ is whether the action improperly interferes with the ALJ's ability to function as an independent and impartial decision maker." *Dep't of Labor v. Avery*, 120 M.S.P.R. 150, 153 (2013); *see also id.* at 155 (precluding action "for a reason that interferes with [their] qualified judicial independence"). Thus, only rarely can poor adjudicatory performance, such as adjudicatory errors or failure to follow adjudicatory instructions, be "good cause" for discipline. *See, e.g.*, *Abrams v. SSA*, 703 F.3d 538, 545 (Fed. Cir. 2012) ("failure to follow instructions" qualifies only if the instructions were "unrelated to their decisional independence"). And even when the MSPB agrees that an ALJ engaged in sanctionable misconduct, it can insist on lesser sanctions than removal. *See, e.g.*, *SSA v. Brennan*, 27 M.S.P.R. 242, 248, 251 (1985), *aff'd*, 787 F.2d 1559 (Fed. Cir. 1986) ("disruptive conduct" did not warrant

removal); *SSA v. Levinson*, 2023 M.S.P.B. 20, ¶¶ 40-41 (July 12, 2023) (reaffirming factors considered in reviewing scope of sanction). As the restrictions in *Perkins* and *Morrison* were modest and allowed removal for insubordination, *supra* at 5-6, ALJs' stronger protections transgress "the outermost constitutional limits" for inferior officers. *Seila Law*, 140 S. Ct. at 2200.

The second and third layers are the icing on this poisoned cake. The President cannot remove at will *either* the FTC Commissioners who must seek an ALJ's removal *or* the MSPB members who must approve such removal; both are shielded by the restrictive "inefficiency, neglect of duty, or malfeasance in office" standard. 5 U.S.C. § 1202(d); 15 U.S.C. § 41; *Seila Law*, 140 S. Ct. at 2206-07. This thick insulation directly violates *Free Enterprise Fund*. ALJs' "[multiple] for-cause [removal] limitations" deprive the President of "the ability to oversee [ALJs] or to attribute [their] failings to those whom he *can* oversee." 561 U.S. at 492, 496. The scheme "not only protects [ALJs] from removal except for good cause, but withdraws from the President any decision on whether that good cause exists." *Id.* at 495. "That decision is vested instead in [the FTC and MSPB]," and "if the President disagrees with [their] determination[s], he is powerless to intervene—unless th[e] determination is so unreasonable as to" itself constitute cause. *Id.* at 495-96. "The result is [ALJs who are] not accountable to the President, and a President who is not responsible for [ALJs]." *Id.* at 495. Indeed, the Fifth Circuit recently reached that exact conclusion, holding it unconstitutional that "SEC ALJs are insulated … by at least two layers of for-cause protection from removal." *Jarkesy*, 34 F.4th at 463. As here, the SEC's "ALJs can only be removed … if good cause is found by the [MSPB]," and "SEC Commissioners and MSPB members can only be removed by the President for cause"—insulating the ALJs to the point "that the President cannot take care that the laws are faithfully executed." *Id.* at 464-65.

9

**5.    This Court May Not And Should Not Recognize A New Exception To The President's Removal Power For ALJs**

Despite all this, the FTC has resisted the conclusion that ALJs' removal protections are unconstitutional, viewing Executive Branch "adjudicators" as different from other executive officers. *See Axon*, 2020 WL 5406806, at *3-6; *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1133 (9th Cir. 2021). But *Seila Law* could not have been clearer that the "general rule" is "the President's unrestricted removal power," 140 S. Ct. at 2198, or that the "two exceptions" it articulated are the "outermost" incursions on the general rule, *id.* at 2199-2200. Only the Supreme Court has the "prerogative" to create a new exception to the rule established by "its precedents." *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997).

In any event, a novel "adjudicators exception" would be misguided. Even if "the duties of [ALJs] partake of a Judiciary quality as well as Executive, [ALJs] are still exercising executive power and must remain dependent upon the President." *Arthrex*, 141 S. Ct. at 1982 (cleaned up) (addressing analogous Administrative Patent Judges); *accord City of Arlington*, 569 U.S. at 305 n.4. Indeed, adjudications by executive officers have occurred "since the beginning of the Republic," *id.*, and it was common for those officers to be subject to presidential removal, Harold J. Krent, *Presidential Control of Adjudication Within The Executive Branch*, 65 Case W. Reserve L. Rev. 1083, 1089-91 (2015), which is unsurprising since they make executive policy through their adjudications, 15 Op. O.L.C. at 14-15. Today, executive adjudication—conducted by nearly 2,000 ALJs (more than double the number of Article III judges)—"wields vast power and touches almost every aspect of daily life." *Free Enter. Fund*, 561 U.S. at 499. To prevent their exercise of executive authority from "slip[ping] from the [Chief] Executive's control," the use of "removal as a tool of supervision" cannot be further restricted beyond the recognized narrow exceptions. *Id.*

The adjudicators-are-special theory leans heavily on a footnote in *Free Enterprise Fund*. *See Matter of Axon*, 2020 WL 5406806, at *3. But the footnote merely stated that the Court's holding did "not address" ALJs either way, 561 U.S. at 507 n.10, as part of a broader disavowal of "general pronouncements on matters neither briefed nor argued," *id.* at 506. The footnote further observed that ALJs' status as "officers" was then unsettled, in part because their powers are "adjudicative" and sometimes "recommendatory," *id.*, but the Supreme Court has since held that ALJs *are* officers, *Lucia*, 585 U.S. at 248-51, that executive adjudication exercises executive power all the same, *Seila Law*, 140 S. Ct. at 2198 n.2, and that "unrestricted removal" is the "general rule," *id.* at 2198. Those holdings confirm what *Myers* said long ago: "[E]ven when "executive officers" have "quasi-judicial" duties, the President must be able to "consider a decision … as a reason for removing [such an] officer," or he cannot "discharge his own constitutional duty of seeing that the laws be faithfully executed." 272 U.S. at 135.[1]

The FTC also has claimed that it has constitutionally sufficient control over its ALJs because it can exercise plenary review over their decisions and because they have limited powers

---

[1] To be sure, the Supreme Court has upheld Congress's creation of independent adjudicative tribunals like the MSPB and FTC. But those entities rest on the inapposite fiction that they exercise "'no part of the executive power'" in light of, among other things, their "organizational features" as freestanding "administrative bod[ies]." *Seila Law*, 140 S. Ct. at 2198 (quoting *Humphrey's Executor*, 295 U.S. at 628). That fiction, which "has not withstood the test of time," *id.* at 2198 n.2 (citing *City of Arlington*, 569 U.S. at 305 n.4), should not be *extended* to inferior officers who adjudicate matters *within and for* an agency. Where an agency head is removable by the President at will, applying the fiction to the agency's ALJs is untenable; they are indisputably "part of the Executive establishment," *Wiener*, 357 U.S. at 353, and thus insulating them "blur[s] the lines of accountability" within an entity for which the President must be responsible, *Arthrex*, 141 S. Ct. at 1973. And where the agency head is *not* removable at will—as is the case for the FTC here—applying the fiction to the agency's ALJs is intolerable: "a second level of tenure protection changes the nature of the President's review," because the President cannot even hold the agency accountable for its ALJs' actions "to the same extent that he may hold [it] accountable for everything else that it does." *Free Enter. Fund*, 561 U.S. at 496.

(as compared to the PCAOB in *Free Enterprise Fund*). *See Axon*, 2020 WL 5406806, at *4-5. Again, this argument is foreclosed by Supreme Court precedent. *Lucia* held that the features identified "make no difference" to ALJs' status as inferior officers. 585 U.S. at 249-51. And *Free Enterprise Fund* held that "[b]road power over [an inferior officer's] functions is not equivalent to the power to remove" them. 561 U.S. at 504. There, the SEC could "relieve the [PCAOB] of authority," "amend Board sanctions," "issue binding regulations" for the Board, and "enforce Board rules on its own," but all that "power over Board *activities*" was deemed no "substitute for authority over its *members*." *Id.* (emphases added). Article II's "clear and effective chain of command"—with the threat of removal ensuring that inferior officers do their jobs correctly—is not satisfied by the ability of a principal officer to do (or redo) their jobs for them. *Id.* at 498.

### 6. The Proper Remedy Here Is To Enjoin The ALJ's Participation Because The Unconstitutional Removal Restrictions Are Not Severable

To determine the "appropriate remedy" for an unconstitutional removal restriction, courts must conduct a severability inquiry, analyzing whether to invalidate the officer's removal protection or instead to void the powers granted to the officer. *Seila Law*, 140 S. Ct. at 2207. The critical "inquiry in evaluating severability is whether the statute will function in a *manner* consistent with the intent of Congress" if the unconstitutional portion alone is voided. *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987). Even if the statute would be "fully operative" without the unconstitutional provisions, courts still cannot sever them if "rewrit[ing] [the] statute" that way would "give it an effect altogether different from that sought by the measure viewed as a whole." *Murphy v. NCAA*, 584 U.S. 453, 481-82 (2018).

In this case, the only remedy that is consistent with congressional intent and tailored to the constitutional problem is to declare that ALJs' removal protections are nonseverable and to enjoin

the FTC from using ALJs in the adjudication. The alternative of severing ALJs' removal restrictions would improperly wield the judiciary's "remedial powers to circumvent the intent of the legislature." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330 (2006) (cleaned up). "The substantial independence that the [APA]'s removal protections provide to [ALJs] is a central part of the Act's overall scheme." *Lucia*, 585 U.S. at 260 (Breyer, J., concurring in the judgment in part).

The "historical context" of the relevant statutes makes that "evident." *Free Enter. Fund*, 561 U.S. at 509. Before 1946, ALJs (called "hearing examiners") were employees whose "tenure and status" "depended upon their classification" and "the ratings given them by the[ir] agency." *Ramspeck*, 345 U.S. at 130. This dependence produced "[m]any complaints" that "they were mere tools of the agency," "subservient to the agency heads." *Id.* at 131. That was deemed incompatible with the "independent judgment" needed for a "fair and competent hearing." *Butz v. Economou*, 438 U.S. 478, 513-14 (1978). Executive and legislative committees held "extensive hearings" and considered "[s]everal proposals" for how to solve the problem. *Ramspeck*, 345 U.S. at 131-32.

In enacting the APA in 1946, Congress chose "to make hearing examiners 'a special class of semi-independent subordinate hearing officers' by vesting control of their compensation, promotion and tenure in the Civil Service Commission." *Id.* at 132. Thus, until 1978, ALJs were "removable by the agency in which they [were] employed only for good cause established and determined by the Civil Service Commission." Administrative Procedure Act, Pub. L. No. 79-404, § 11, 60 Stat. 237 (1946). And correspondingly, these newly insulated adjudicators were granted additional "powers … comparable to those of a trial judge." *Economou*, 438 U.S. at 513.

Notably, though, the members of the Civil Service Commission were removable at will by the President, 5 U.S.C. § 632 (1946), spawning objections that the Commission was susceptible to

"being pressured" by the Executive, Civil Service Reform: Hearings on H.R. 11280 Before the H. Comm. on Post Off. & Civ. Serv., 95th Cong. 824 (1978). So in 1978, Congress further insulated ALJs in the Civil Service Reform Act. It replaced the Commission with the MSPB, *see* Pub. L. No. 95-454, §§ 202, 204, 92 Stat. 1111, 1121-22, 1137, and it "confer[red] upon [MSPB] members a tenure akin to that of the Federal Judiciary," Hearings on H.R. 11280, *supra*, at 824. It made them removable by the President only under the *Humphrey's Executor* standard, 5 U.S.C. § 1202(d), and ALJs removable by agencies "only for good cause established and determined by the [MSPB]," *id.* § 7521(a). Congress meant these two protections to work in tandem; unsurprisingly, the Reform Act includes no severability clause should either be held invalid.

That history distinguishes cases where courts sever invalid removal restrictions based on the premise that "Congress would have preferred" an officer removable by the President to no officer at all. *Seila Law*, 140 S. Ct. at 2210. Half a loaf is often better than none, but not when the bread is moldy. In enacting the relevant provisions of the APA and the Reform Act, Congress was not creating a new system of executive adjudication, but *reforming* the old system to cure specific, well-known "complaints." *Ramspeck*, 345 U.S. at 131. It deliberately made agency adjudicators "independent and secure in their tenure and compensation," S. Rep. No. 79-752, at 215 (1945), in order to safeguard actual and apparent impartiality by ensuring that only "fair and competent hearing personnel" wielded judge-like powers, *Economou*, 438 U.S. at 513-14.

While that policy concern cannot override the constitutional defects with Congress' chosen solution, it is critical to choosing the remedy most consistent with Congress' intent. Severing ALJs' removal protections would turn them back into the very agency foot-soldiers that Congress deliberately sought to replace, only worse—as these non-independent adjudicators would still wield the additional powers that Congress granted thinking they were now akin to federal judges.

Especially given that Congress considered "[s]everal proposals" *besides* tenure protection to reform the pre-APA system, including constitutionally compliant ones such as "a completely separate 'examiners' pool," *Ramspeck*, 345 U.S. at 131, 132 n.2, it is evident that "Congress would not have enacted" a scheme of turbo-charged hearing examiners still subservient to their agency heads, *Alaska Airlines*, 480 U.S. at 685. *That* option "would have seemed exactly backwards" to the "Congress[es] that adopted" the APA and the Reform Act. *Murphy*, 584 U.S. at 482-83.[2]

Finally, while Congress emphatically rejected the use in agency adjudications of nominally neutral hearing officers who were actually tools of their agency heads, Congress expressly preserved the ability of agencies to conduct the adjudications themselves, *see* 5 U.S.C. §§ 556(b)(1), 557(b), and the latter, unlike the former, does not "blur the lines of accountability," *see Arthrex*, 141 S. Ct. at 1973. Thus, rather than "blue-pencil" essential removal protections out of Congress's carefully crafted ALJ scheme, *see Free Enter. Fund*, 561 U.S. at 509, the Court should simply enjoin Defendants from conducting the FTC adjudication against H&R Block using ALJs. *See Collins*, 141 S. Ct. at 1788 & n.23 (recognizing that an unconstitutionally insulated officer lacks valid authority to act if the removal protection in nonseverable); *Free Enter. Fund*, 561 U.S. at 491 n.2 (injunctive relief "has long been recognized as the proper means for preventing entities from acting unconstitutionally").

---

[2] Severing the *MSPB's* removal protections would equally contravene Congress's intent, and it would not even tailor "the solution to the problem." *Free Enter. Fund*, 561 U.S. at 508. It would be under-inclusive because FTC ALJs exercise too much power for even one level of removal protection, *see* Part III.A.3, *supra*; and also over-inclusive because the MSPB performs a host of non-ALJ-related adjudicatory duties that are properly vested in an independent agency under *Wiener*, *see* 5 C.F.R. §§ 1201.1-1201.3. Severing the *FTC*'s removal protections would not work for the same reasons, especially since *Humphrey's Executor* upheld those precise protections.

**B.      The Equitable Factors For A Preliminary Injunction Favor H&R Block**

Without a preliminary injunction, H&R Block will be irreparably harmed; indeed, the Supreme Court already said as much in *Axon*.  There, the Court held that parties raising the same challenges to FTC and SEC ALJs could invoke the jurisdiction of federal courts to enjoin pending agency adjudications, reasoning that "having to appear in proceedings before an unconstitutionally insulated ALJ" itself constitutes a "here-and-now injury."  143 S. Ct. at 903.  It also explained that such an injury "is impossible to remedy"—in other words, is *irreparable*—"once the proceeding is over," as "[a] proceeding that has already happened cannot be undone."  *Id.* at 904.  H&R Block faces the identical irreparable injury here.

Conversely, the federal government will suffer no cognizable harm from halting "the perpetuation of unlawful agency action," *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016), and "it is always in the public interest to protect constitutional rights," *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008).  And the modest scope of Plaintiffs' requested relief mitigates any harm the FTC may assert.  As noted, even without using an ALJ, the FTC can adjudicate the administrative complaint itself.  15 U.S.C. § 45(b). Any inconvenience that may cause the agency hardly outweighs H&R Block's "here-and-now injury" of "having to appear in proceedings before an unconstitutionally insulated ALJ."  *Axon*, 143 S. Ct. at 903.

### IV.      CONCLUSION

This Court should preliminarily enjoin Defendants from conducting the FTC adjudication pending against H&R Block using an ALJ.

DATED:  March 20, 2024                 Respectfully submitted,


                                       By:  */s/ Stacey R. Gilman*
                                            Stacey R. Gilman (MO Bar #55690)
                                            BERKOWITZ OLIVER LLP
                                            2600 Grand Boulevard Suite 1200
                                            Kansas City, Missouri  64108
                                            Telephone:  (816) 561-7007
                                            Facsimile:  (816) 561-1888
                                            sgilman@berkowitzoliver.com

                                            Hashim M. Mooppan *(pro hac vice pending)*
                                            JONES DAY
                                            51 Louisiana Ave., N.W.
                                            Washington, D.C.  20001
                                            (202) 879-3939
                                            hmmooppan@jonesday.com

                                            ***Attorneys for Plaintiffs H&R Block Inc.;***
                                            ***HRB Digital LLC; HRB Tax Group, Inc.***

## CERTIFICATE OF SERVICE

I am counsel to Plaintiff; on March 20, 2024, I filed the foregoing using ECF and, consistent with FRCP 4(i), caused the same to be served to the following by registered or certified mail:

Office of Administrative Law Judges
Federal Trade Commission
600 Pennsylvania Ave, NW
Washington, DC  22580

Office of the Secretary
Federal Trade Commission
600 Pennsylvania Ave, NW
Washington, DC  22580

U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC  20530

Civil Process Clerk, U.S. Attorney's Office for Western District of Missouri
400 E. 9th Street, Room 5510   Kansas City, MO  64106

/s/ Stacey R. Gilman
Attorney for Plaintiffs