**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

|  |  |
|---|---|
| H&R BLOCK INC. *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 4:24-cv-198-BP |
| JAY L. HIMES, in his official capacity as Federal Trade Commission Administrative Law Judge, *et al.*, | |
| Defendants. | |

**DEFENDANTS' SUGGESTIONS IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND .................................................................................................................3

ARGUMENT ......................................................................................................................4

I.     Plaintiffs cannot establish irreparable harm sufficient for emergency relief, and the balance of the equities does not favor a preliminary injunction ......................................5

II.    Plaintiffs are unlikely to succeed on the merits of their Article II claim ....................6

      A.    Congress may restrict the President's ability to remove ALJs ........................7

      B.    ALJ removal protections remain permissible after *Free Enterprise* ................10

      C.    Plaintiffs have failed to allege a legally cognizable claim ................................16

      D.    No relief would be warranted in any event because the Court may construe section 7521 in a manner that resolves the alleged constitutional defect....................17

III.   In any event, Plaintiffs would not be entitled to an injunction halting any ALJ proceeding against them ...............................................................................................18

CONCLUSION ..................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Abrams v. SSA*,
   703 F.3d 538 (Fed. Cir. 2012) ................................................................................................13

*Axon Enterprises, Inc. v. FTC*,
   598 U.S. 175 (2023) ................................................................................................... 1, 5

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
   140 S. Ct. 2335 (2020) ................................................................................................ 18, 19

*Bhatti v. Fed. Hous. Fin. Agency*,
   15 F.4th 848 (8th Cir. 2021) ................................................................................................20

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
   51 F.4th 616 (5th Cir. 2022), *cert. granted on other grounds*, 143 S. Ct. 978 (2023) ........................... 15, 16

*Collins v. Dep't of the Treasury*,
   83 F.4th 970 (5th Cir. 2023) ................................................................................................16

*Collins v. Yellen*,
   141 S. Ct. 1761 (2021) ................................................................................................*passim*

*Decker Coal Co. v. Pehringer*,
   8 F.4th 1123 (9th Cir. 2021) ................................................................................................ 12, 15

*Free Enter. Fund v. PCAOB*,
   537 F.3d 667 (D.C. Cir. 2008) ................................................................................................12

*Free Enterprise Fund v. Public Company Accounting Oversight Board*,
   561 U.S. 477 (2010) ................................................................................................*passim*

*Humphrey's Ex'r v. United States*,
   295 U.S. 602 (1935) ................................................................................................9

*Jarkesy v. SEC*,
   34 F.4th 446 (5th Cir. 2022), *reh'g en banc denied*, 51 F.4th 644 (5th Cir. 2022),
   *cert. granted*, 143 S. Ct. 2688 (argued Nov. 29, 2023) ................................................................ 15, 16

*K&R Contractors, LLC v. Keene*,
   86 F.4th 135 (4th Cir. 2023) ................................................................................................16

*Lawson v. DoorDash, Inc.*,
   658 F. Supp. 3d 707 (W.D. Mo. 2023) ................................................................................................4

*Leachco, Inc. v. CPSC*,
   No. 22-cv-232, 2023 WL 4934989 (E.D. Okla. Aug. 2, 2023) ..............................................6

*Lewis v. Casey*,
   518 U.S. 343 (1996) ..........................................................................................................20

*Lucia v. SEC*,
   585 U.S. 237 (2018) ..........................................................................................................12

*Meta Platforms, Inc. v. FTC*,
   — F. Supp. 3d —, 2024 WL 1121424 (D.D.C. Mar. 15, 2024) ..........................................6

*Morrison v. Olson*,
   487 U.S. 654 (1988) ......................................................................................................*passim*

*Munaf v. Geren*,
   553 U.S. 674 (2008) ............................................................................................................4

*Myers v. United States*,
   272 U.S. 52 (1926) ..........................................................................................................8, 9

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................................................4

*NLRB v. Jones & Laughlin Steel Corp.*,
   301 U.S. 1 (1937) ..............................................................................................................17

*Ramspeck v. Fed. Trial Exam'rs Conf.*,
   345 U.S. 128 (1953) ............................................................................................................8

*Regan v. Time, Inc.*,
   468 U.S. 641 (1984) ..........................................................................................................19

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
   415 U.S. 1 (1974) ................................................................................................................5

*Schlesinger v. Reservists Comm. to Stop the War*,
   418 U.S. 208 (1974) ..........................................................................................................20

*Seila Law LLC v. CFPB*,
   140 S. Ct. 2183 (2020) ..................................................................................................*passim*

*SSA v. Anyel*,
   58 M.S.P.R. 261 (1993) ....................................................................................................13

*SSA v. Brennan*,
   27 M.S.P.R. 242 (1985), *aff'd*, 787 F.2d 1559 (Fed. Cir. 1986). ......................................14

iii

*SSA v. Burris,*
    39 M.S.P.R. 51 (1988), *aff'd*, 878 F.2d 1445 (Fed. Cir. 1989) ................................13

*SSA v. Glover,*
    23 M.S.P.R. 57 (1984) ................................................................................13

*SSA v. Levinson,*
    2023 M.S.P.B. 20 (2023) ............................................................................14

*SSA v. Manion,*
    19 M.S.P.R. 298 (1984) ..............................................................................13

*SSA v. Mills,*
    73 M.S.P.R. 463 (1996), *aff'd*, 124 F.3d 228 (Fed. Cir. 1997) ......................13

*United States v. Perkins,*
    116 U.S. 483 (1886) ...............................................................................7, 9

*Walmart Inc. v. King,*
    No. 23-cv-40, 2024 WL 1258223 (S.D. Ga. Mar. 25, 2024)...................16, 19

*Watkins Inc. v. Lewis,*
    346 F.3d 841 (8th Cir. 2003) .......................................................................4

*Wiener v. United States,*
    357 U.S. 349 (1958) ....................................................................................8

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ........................................................................................4

**Statutes**

5 U.S.C. § 554 ..................................................................................................3

5 U.S.C. § 557 ...............................................................................................3, 5

5 U.S.C. § 1202 ...........................................................................................3, 10

5 U.S.C. § 7521 ...................................................................................2, 3, 13, 14

15 U.S.C. § 41 ............................................................................................3, 10

15 U.S.C. § 45 ..................................................................................................3

**Regulations**

16 C.F.R. § 3.42 ...............................................................................................3

16 C.F.R. § 3.51 ................................................................................................................ 3, 5, 8

16 C.F.R. § 3.52 ........................................................................................................................ 3

16 C.F.R. § 3.53 ........................................................................................................................ 3

16 C.F.R. § 3.54 ........................................................................................................................ 3

**Other Authorities**

Sec'y of Educ. Review of ALJ Decisions, 15 Op. O.L.C. 8 (1991) ........................................ 10

# INTRODUCTION

Since the enactment of the Administrative Procedure Act in 1946, Congress has provided agency adjudicative officers known as administrative law judges (ALJs) with a measure of protection against arbitrary removal. Those modest protections help safeguard the decisional independence of ALJs, who perform the important but subordinate function of preparing non-final decisions that are subject to higher review by their employing agencies. These longstanding protections comport with precedent recognizing that inferior officers, particularly those engaged in purely adjudicative functions, need not be subject to at-will removal. Plaintiffs H&R Block Inc. and its subsidiaries—which are subject to administrative proceedings before a Federal Trade Commission (FTC) ALJ over alleged violations of the FTC Act—now ask this Court to hold those longstanding removal limits unconstitutional and to preliminarily enjoin the ALJ proceedings against them. Plaintiffs cannot satisfy the demanding requirements for such relief, and the Court should deny their request.

At the outset, Plaintiffs do not even allege a concrete, individual harm, much less one requiring emergency relief. Plaintiffs suggest that they will be irreparably harmed by having to proceed before an ALJ who is subject to allegedly unconstitutional removal protections, citing *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023). But *Axon* addressed subject-matter jurisdiction, not preliminary relief. Reading *Axon* to essentially nullify the irreparable-harm requirement for a preliminary injunction would flout the principle that preliminary injunctions are the exception, not the rule, and would be enormously disruptive to agency proceedings across the government. And an injunction would be contrary to the public interest by inhibiting the FTC from protecting consumers harmed by Plaintiffs' alleged deceptive practices. The Court should thus deny the requested relief based on the equitable factors alone.

In any event, Plaintiffs are not likely to succeed on the merits of their claim. Plaintiffs assert that the statutory removal protections applicable to all ALJs—including FTC ALJs—are unlawful

because, in their view, Congress cannot lawfully impose *any* limit on the President's ability to remove ALJs. Plaintiffs further contend that, even if Congress may impose some limits on the President's authority to remove ALJs, the removal protections at issue are still unlawful because the Merit Systems Protection Board (MSPB), an Executive Branch agency, reviews whether an employing agency has established cause for removing an ALJ. Plaintiffs' arguments are contrary to controlling Supreme Court precedent and, in any case, would not warrant injunctive relief.

The Supreme Court has repeatedly made clear that Congress may restrict the President's ability to remove adjudicatory inferior officers, and FTC ALJs are undoubtedly adjudicatory inferior officers. They do not, and cannot, initiate investigations, bring enforcement actions, or enact regulations. They simply issue recommendations for resolving disputes as neutral arbiters, with powers limited to those necessary to perform that function. Moreover, contrary to Plaintiffs' assertions, the challenged removal protections here are wholly unlike those in *Free Enterprise Fund v. Public Company Accounting Oversight Board* (*PCAOB*), 561 U.S. 477 (2010). The removal limits there were impermissible because they were unusually stringent and protected board members who exercised significant enforcement authority. Here, by contrast, the ALJs are protected by a standard "good cause" removal provision and—unlike PCAOB members—cannot initiate investigations or enforcement actions, nor publish regulatory rules, in carrying out their limited adjudicatory role.

Plaintiffs' extreme theory would threaten to derail proceedings overseen by the nation's roughly 2,000 ALJs, in contravention of binding Supreme Court precedent. The Court should reject that theory and deny Plaintiffs' motion for preliminary relief. Even if the Court disagrees, however, it should interpret 5 U.S.C. § 7521 to avoid the alleged constitutional problem, or else limit any relief to severing the offending provision only as to FTC ALJs, while leaving the remainder of the statutory scheme intact.

2

# BACKGROUND

1. *Statutory and regulatory background.* The FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce" and empowers and directs the FTC to prevent those unlawful acts and practices. 15 U.S.C. § 45(a); *see* 16 C.F.R. pt. 3. Congress gave the FTC several tools to carry out its directive under this Act. As relevant here, where the Commission believes a corporation has been engaging in an unfair or deceptive act or practice and that a proceeding by the Commission would be in the public interest, it may serve an administrative complaint on the corporation stating its allegations. 15 U.S.C. § 45(b). The corporation has the right to appear at a hearing and to "show cause" why the Commission should not order the corporation to cease and desist from the unfair or deceptive conduct. *Id.* Hearings may be held directly before the Commission, which issues its own decision, or before an ALJ, who issues a recommended decision that is reviewed by the Commission. 16 C.F.R. §§ 3.42, 3.51–3.54. The Commission reviews the ALJ's legal and factual determinations *de novo*, and it may modify or set aside any aspect of the ALJ's decision. 16 C.F.R. § 3.54(a)–(b). The Commission's administrative cease-and-desist orders are then reviewable by the federal courts of appeals. 15 U.S.C. § 45(c).

The role of FTC ALJs is purely adjudicatory and advisory: they do not initiate their own investigations or proceedings, nor do they issue final decisions not subject to review by the Commission. *See* 5 U.S.C. §§ 554(d)(2), 557(b); 16 C.F.R. § 3.51. An ALJ may generally be removed "by the agency in which the [ALJ] is employed"—here, the FTC—"only for good cause established and determined by the [MSPB]." 5 U.S.C. § 7521(a). FTC commissioners and MSPB members, in turn, "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202(d); 15 U.S.C. § 41.

2. *Factual and procedural background.* On February 23, 2024, the FTC issued an administrative complaint against Plaintiffs, alleging unfair and deceptive practices with respect to

Plaintiffs' online tax-preparation services. *See* Compl., *In re H&R Block Inc.*, No. 9427 (F.T.C. filed Feb. 23, 2024), https://perma.cc/A7V2-9DF8. The Commission alleged that Plaintiffs deceptively marketed their products as free when they were not free for many consumers, unfairly induced consumers into purchasing more expensive products than they want or need by making it difficult to downgrade to less-expensive products, and unfairly deleted certain consumers' tax data. *See id.* at 1. The Commission noticed a hearing on the charges for October 23, 2024, before an FTC ALJ. *Id.* at 16.

On March 20, 2024, Plaintiffs filed this suit challenging FTC ALJs' removal protections as inconsistent with Article II of the Constitution. Compl. ¶¶ 30–33, ECF No. 1. Plaintiffs now ask this Court to issue emergency relief enjoining the proceedings before an FTC ALJ pending the litigation of their claim. *See* Pls.' Mot. for Prelim. Inj., ECF No. 5. Plaintiffs challenge no other part of the statutory scheme governing those administrative proceedings.

## ARGUMENT

"A preliminary injunction is an extraordinary and drastic remedy" that should "never be awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008).[1] A plaintiff is entitled to such an "extraordinary remedy" only "upon a clear showing" that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). "[N]o single factor is determinative," but "the Eighth Circuit has consistently held that likelihood of success on the merits is the most important factor." *Lawson v. DoorDash, Inc.*, 658 F. Supp. 3d 707, 714 (W.D. Mo. 2023) (Phillips, C.J.). Further, "[f]ailure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Id.* (quoting *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). When the

---

[1] Internal quotation marks and citations are omitted throughout this brief unless otherwise stated.

government is the opposing party, the last two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiffs here do not meet their burden of demonstrating any of the preliminary-injunction factors.

## I.    Plaintiffs cannot establish irreparable harm sufficient for emergency relief, and the balance of the equities does not favor a preliminary injunction

Plaintiffs have not established any irreparable harm meriting preliminary relief. In support of their claim of irreparable harm, they rely exclusively on the Supreme Court's statement in *Axon* that "being subjected to unconstitutional agency authority" was "a here-and-now injury" that could not be "remed[ied] once the proceeding [was] over." 598 U.S. at 191. In *Axon*, however, the Court held only that, in light of such an injury, a district court may have jurisdiction to hear constitutional challenges to administrative review schemes that would otherwise be channeled away from district court review. *See id.* at 180. The Court never stated that the injury would merit *emergency equitable relief* from a district court. Indeed, in *Collins v. Yellen*, it suggested the opposite, noting that allegedly unconstitutional removal restrictions do not necessarily justify relief "void[ing]" any action taken by an official protected by those restrictions. 141 S. Ct. 1761, 1787 (2021). The Court noted that a plaintiff asserting a removal claim could be "entitle[d] to . . . relief" only if it demonstrated that, but for the challenged removal restrictions, the proceedings would have unfolded in a manner more beneficial to the plaintiff. *Id.* at 1788–89. In other contexts, too, the Supreme Court has made clear that an alleged injury does not warrant emergency interim relief simply because it cannot be undone after judgment. *See, e.g.*, *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("litigation expense" may be "substantial and *unrecoupable*" but nonetheless "does not constitute irreparable injury" warranting a preliminary injunction (emphasis added)).

Here, Plaintiffs do not even allege that the ALJ proceedings at issue would unfold differently absent the ALJ removal restrictions. And, even if the ALJ were to issue a recommendation adverse to Plaintiffs, that decision would not be final unless and until adopted by the Commission itself. *See*

5 U.S.C. § 557(b); 16 C.F.R. § 3.51. Thus, Plaintiffs have failed to establish the requisite irreparable harm. *Cf., e.g.*, *Meta Platforms, Inc. v. FTC*, — F. Supp. 3d —, 2024 WL 1121424, at *9 (D.D.C. Mar. 15, 2024) (denying preliminary injunction in challenge to other FTC proceedings and explaining that this theory of irreparable harm "would turn every appointments clause, commerce clause, non-delegation, major question, and separation of powers challenge into a case requiring expedited resolution of whether the plaintiff is likely to succeed on the merits"); *Leachco, Inc. v. CPSC*, No. 22-cv-232, 2023 WL 4934989, at *2 (E.D. Okla. Aug. 2, 2023) ("*Axon* simply answered a jurisdictional question; it did not include an injunction analysis," nor "hold that a separation-of-powers allegation constitutes irreparable harm"). Moreover, even under Plaintiffs' theory, there is no *emergency* here, where the administrative hearing is scheduled to begin more than seven months after the motion seeking emergency relief was filed, and Plaintiffs do not even allege that any harm may occur in the interim. *See* Pls.' Mot. at 2, 16.

By contrast, Plaintiffs' requested injunction would certainly undermine the government's interest in protecting consumers from unfair and deceptive business practices. Requiring the FTC to delay adjudicating the underlying complaint until after the conclusion of this case could foreclose the possibility of the Commission reaching a final decision—and issuing an order protecting consumers, if determined to be necessary—before the height of the next tax season, when consumers are most vulnerable to the allegedly unfair and deceptive practices at issue.

Accordingly, the balance of the equities counsels against Plaintiffs' requested relief.

## II. Plaintiffs are unlikely to succeed on the merits of their Article II claim

"[T]he President's power to remove Government officials" under Article II is "not all-inclusive in respect of civil officers." *Morrison v. Olson*, 487 U.S. 654, 687 (1988); *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2198 (2020) (the Supreme Court has "previously sustained congressional limits on [the President's removal] power"). As relevant here, the Supreme Court has consistently

held that Congress may require cause for the removal of inferior officers who wield limited executive authority. *See, e.g.*, *Seila Law*, 140 S. Ct. at 2200; *United States v. Perkins*, 116 U.S. 483, 485 (1886) (Congress "may limit and restrict" the authority of agency heads to remove inferior officers "as it deems best").

Plaintiffs claim that the removal protections for FTC ALJs are unconstitutional based on two theories. First, Plaintiffs argue that the Constitution requires that the President have the right to remove ALJs at will. Second, Plaintiffs assert that, even if Congress may restrict the President's power to remove ALJs, the particular for-cause protections at issue are unconstitutional under the Supreme Court's decision in *Free Enterprise Fund*. Neither theory has merit. Congress acted permissibly by requiring agencies to establish cause for the removal of their ALJs, who serve a limited, adjudicatory function and are subject to a standard good-cause removal protection.

## A. Congress may restrict the President's ability to remove ALJs

Plaintiffs' contention that ALJs—adjudicators entrusted to render impartial decisions in administrative proceedings—cannot be subject to any removal protections flouts clear Supreme Court precedent. "[W]hen congress, by law, vests the appointment of inferior officers in the heads of departments, it may limit and restrict the power of removal as it deems best for the public interest." *United States v. Perkins*, 116 U.S. 483, 485 (1886); *see Morrison*, 487 U.S. at 689 n.27 (recognizing that with respect to "'inferior' executive officials," there is "no specific constitutional impediment to congressionally imposed restrictions on the President's removal powers"); *Seila Law*, 140 S. Ct. at 2200 (reaffirming that Congress may restrict the President's ability to remove at least "inferior officers with limited duties and no policymaking or administrative authority").[2] This

---

[2] Plaintiffs imply that, in *Seila Law*, the Supreme Court narrowed the circumstances in which Congress may restrict a President's removal power. *See* Pls.' Mot. at 3–6. But the Supreme Court explicitly stated that it was not "revisit[ing] *Humphrey's Executor* or any other precedent" on the

principle includes agency adjudicators, who review individual cases rather than performing "policymaking or administrative" functions. *Seila Law*, 140 S. Ct. at 2200. Removal restrictions may be appropriate in these circumstances because "Congress might be more inclined to find that a degree of independence from the Executive, such as that afforded by a 'good cause' removal standard, is necessary to the proper functioning of the agency." *Morrison*, 487 U.S. at 691 n.30; *see also Collins*, 141 S. Ct. at 1783 n.18 (2021) (distinguishing removal protections for "an adjudicatory body," which has "a unique need" for "freedom from Executive interference" (citing *Wiener v. United States*, 357 U.S. 349, 352 (1958)).

Accordingly, Congress may lawfully restrict the President's ability to remove FTC ALJs. Those ALJs perform only advisory, adjudicatory functions. *See supra* at 3. They cannot initiate investigations or bring enforcement actions. They do not enact rules or regulations. Nor can they issue any final decisions that automatically take effect. Rather, they preside over hearings as neutral arbiters, recommending decisions that the Commission itself is bound to review, with powers limited to those necessary to fulfill that role. *See id.*; *see also Free Enter.*, 561 U.S. at 507 n.10 ("[M]any administrative law judges of course perform adjudicative rather than enforcement or policymaking functions."); *Ramspeck v. Fed. Trial Exam'rs Conf.*, 345 U.S. 128, 130–31 (1953) (noting that "hearing examiners"—precursors to modern ALJs—carry out "adjudicatory functions" and "hold their posts by such tenure as Congress sees fit to give them"); 16 C.F.R. § 3.51. Further, as Plaintiffs acknowledge, ALJs are supposed to have some independence, *see* Pls.' Mot. at 13–15, underscoring Congress's authority to "forbid their removal except for cause." *Morrison*, 487 U.S. at 687.

In seeking to avoid this result, Plaintiffs point to a quote from *Myers v. United States* stating that a decision by an officer with adjudicatory functions may give the President "reason for

---

President's removal power. *Seila Law*, 140 S. Ct. at 2206; *see id.* at 2192 ("we . . . do not revisit our prior decisions allowing certain limitations on the President's removal power").

removing the officer." 272 U.S. 52, 135 (1926); *see* Pls.' Mot. at 11. But section 7521 is entirely consistent with the principle that, although the President may not "properly influence" an executive adjudicator's decisions "in a particular case," "he may consider the decision after its rendition as a reason for removing the officer." *Myers*, 272 U.S. at 135. And in any event, the Supreme Court has since clarified that, "[c]ontrary to the implication of some dicta in *Myers*, the President's power to remove Government officials simply [is] not all-inclusive of civil officers." *Morrison*, 487 U.S. at 687; *see Humphrey's Ex'r v. United States*, 295 U.S. 602, 631 (1935).

Plaintiffs next attempt to narrowly construe *Seila Law*—in which the Supreme Court reaffirmed removal protections for inferior officers with "limited duties and no policymaking or administrative authority"—by suggesting that only those inferior officers whose duties are "limited" in precisely the same ways as the officers' duties in *Morrison* and *Perkins* may have removal protection. Pls.' Mot. at 7. As an initial matter, Plaintiffs fail to explain how FTC ALJs' authority to adjudicate cases assigned by the Commission is more expansive than the independent counsel's authority to investigate and prosecute members of the Executive Branch, *Morrison*, 487 U.S. at 685–93, or more significant than the authority wielded by a military officer, *Perkins*, 116 U.S. at 484–85. In any event, the Supreme Court has never suggested such a constrained interpretation of the applicable standard, nor has it referred to it as "narrow."

Plaintiffs further argue that, even if ALJs play an adjudicatory role, they are still part of the executive branch and thus exercise executive power. *See* Pls.' Mot. at 10. Again, the Supreme Court has already addressed this argument, noting that it "has never held that the Constitution prevents Congress from imposing limitations on the President's power to remove *all* executive officials simply because they wield 'executive' power." *Morrison*, 487 U.S. at 690 n.27; *see id.* n.29 (rejecting the argument "that every officer . . . exercising any part of [the executive] power must . . . be removable . . . at will"). Thus, the question is not whether an official uses "executive power" but

whether, in using that power, the official performs an executive function for which removal restrictions would be improper. And, as explained above, removal restrictions for those performing adjudicatory functions are not improper. *See supra* at 7–8.

Plaintiffs nevertheless insist that ALJs may not be protected from removal because they "make executive policy through their adjudications." Pls.' Mot. at 10 (citing Sec'y of Educ. Review of ALJ Decisions, 15 Op. O.L.C. 8, 14–15 (1991)). True, some ALJ determinations—like many judicial decisions—may have limited policy consequences. *See* 15 Op. O.L.C. at 15 (addressing ALJ proceedings concerning a statutory provision administered by the Secretary of Education). But that unremarkable observation does not make ALJs "policymakers" any more than judicial review (which also has policy consequences) makes federal judges "policymakers." This conclusion is even more warranted here, where the ALJs' recommended decisions are subject to plenary review by the Commission, which can make its own findings and reject any such decision in favor of its own ruling, including to ensure that the ruling reflects the Commission's own policy judgment. *See supra* at 3.

Accordingly, consistent with clear Supreme Court precedent, Congress may limit the President's power to remove FTC ALJs.

### B. ALJ removal protections remain permissible after *Free Enterprise*

Plaintiffs contend that, even if some removal restrictions would be permissible here, the existing protections are impermissible under *Free Enterprise* because FTC commissioners and MSPB members are separately protected by for-cause removal limitations. *See* Pls.' Mot. at 8; 5 U.S.C. § 1202(d); 15 U.S.C. § 41. But *Free Enterprise* provides no support for Plaintiffs' contention because, among other reasons, the Supreme Court made clear that the relevant question is not how many levels of protection a statutory scheme provides a subordinate official; it is whether that scheme, as a

whole, "deprive[s] the President of adequate control" over the official's exercise of executive authority. *Free Enter.*, 561 U.S. at 508.

*Free Enterprise* addressed removal restrictions applicable to the PCAOB, which "govern[s] an entire industry." *Id.* at 485; *see id.* at 508 (the PCAOB "is the regulator of first resort and the primary law enforcement authority for a vital sector of [the] economy"). The PCAOB is "empowered to take significant enforcement actions" and to do so "largely independently." *Id.* at 504. For example, the PCAOB has the power to issue binding rules "regulat[ing] every detail of an accounting firm's practice," the violation of which would constitute "a federal crime"; "initiate[] formal investigations"; and "enforc[e]" several laws and regulations by initiating "disciplinary proceedings." *Id.* at 485–86. The Supreme Court's analysis thus focused on the PCAOB's "significant independence in determining its priorities and intervening in the affairs of regulated firms . . . without Commission preapproval or direction." *Id.* at 505.

Additionally, PCAOB members could be removed by the SEC only in far more limited circumstances, and it was assumed that SEC commissioners in turn could be removed by the President only for cause. *See id.* at 486. The removal standard applicable to PCAOB members was not an "'ordinary' dual for-cause standard," but a "rigorous" and "unusually high" one: members could not "be removed except for willful violations of the [Sarbanes-Oxley] Act, [PCAOB] rules, or the securities laws; willful abuse of authority; or unreasonable failure to enforce compliance." *Id.* at 502–03. The SEC lacked the "power to fire [PCAOB] members for violations of other laws," which the Court found concerning because "[t]he President might have less than full confidence in, say, a Board member who cheats on his taxes; but that" would not be "grounds for removal." *Id.* at 503. The Court noted that, if the President believed this standard was met but the SEC disagreed, the President likely could not find that the SEC erred to an extent meriting the removal of an SEC

commissioner. *See id.* at 496. The removal restrictions thus "withdr[ew] from the President any decision on whether . . . good cause exists." *Id.* at 495.

The Court therefore found that the PCAOB's "highly unusual" removal restrictions "deprive[d] the President of adequate control" because they (1) applied to officers with "substantial executive authority" and (2) "protected" the PCAOB with "two layers of for-cause removal—including at one level a sharply circumscribed definition of what constitutes 'good cause.'" *Id.* at 505, 508. But the Court "did not broadly declare all two-level for-cause protections for inferior officers unconstitutional." *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1132 (9th Cir. 2021) (rejecting a challenge to ALJ removal protections). To the contrary, the Supreme Court emphasized that its "holding d[id] not address ALJs, who generally "perform adjudicative rather than enforcement or policymaking functions," and it suggested that ALJ removal restrictions are meaningfully distinct from those applicable to the PCAOB. *Free Enter.*, 561 U.S. at 507 & n.10; *see id.* at 506 (explaining that ALJs do not "enjoy the same significant and unusual protections . . . as members of the [PCAOB]"); *Lucia v. SEC*, 585 U.S. 237, 261 (2018) (Breyer, J., concurring in part) (the "*Free Enterprise Fund* Court" stated that "[ALJs] were distinguishable from the [PCAOB] members" because many "perform adjudicative . . . functions" and they do not "enjoy the same significant and unusual protections").

The circumstances that guided the Supreme Court's conclusion in *Free Enterprise* are materially different from the circumstances in this case. First, unlike PCAOB members, FTC ALJs do not wield "substantial executive authority." *Free Enter.*, 561 U.S. 505. They cannot issue any rules governing an industry, initiate any investigations or disciplinary proceedings, or issue decisions that independently take effect. They perform a purely adjudicatory role, with powers incidental to that role. *Cf. id.* at 507 n.10 ("[U]nlike members of the [PCAOB], many administrative law judges of course *perform adjudicative rather than enforcement or policymaking functions*." (emphasis added)); *Free Enter.*

*Fund v. PCAOB*, 537 F.3d 667, 699 n.8 (D.C. Cir. 2008) (Kavanaugh, J., dissenting) (noting that "ALJs perform only adjudicatory functions that are subject to review by agency officials, and that arguably would not be considered 'central to the functioning of the Executive Branch' for purposes of the Article II removal precedents").

Further, unlike PCAOB members, who could be removed only in a few discrete circumstances, ALJs are protected by a standard statutory for-cause removal restriction. ALJ removals are allowed for "good cause," 5 U.S.C. § 7521(a), a term not given any statutory definition, much less one that is "sharply circumscribed," *Free Enter.*, 561 U.S. at 505; *see, e.g.*, *Soc. Sec. Admin.* (*SSA*) *v. Mills*, 73 M.S.P.R. 463, 467 (1996) ("Congress explicitly declined to define the phrase 'good cause'" in section 7521), *aff'd*, 124 F.3d 228 (Fed. Cir. 1997). And, in practice, the MSPB has interpreted "good cause" broadly. *See Abrams v. SSA*, 703 F.3d 538, 543 (Fed. Cir. 2012) (deferring to MSPB's interpretation of "good cause," which "includ[es] all matters which affect the ability and fitness of the ALJ to perform the duties of office"). For example, "good cause" may be found based on (i) "failure to follow instructions," *id.*; (ii) deficient "performance, including . . . during the course of an adjudicatory proceeding," *SSA v. Anyel*, 58 M.S.P.R. 261, 268 (1993); (iii) inappropriate "actions taken . . . in the course of an adjudicatory proceeding," *SSA v. Glover*, 23 M.S.P.R. 57, 76 (1984); (iv) "insubordinate and unreasonable refusal to carry out [an ALJ's] primary function of hearing and deciding cases," *SSA v. Manion*, 19 M.S.P.R. 298, 303 (1984); (v) "adjudicatory errors," *Anyel*, 58 M.S.P.R. at 268; and even (vi) abuse of "free mail privileges," because it is "unlawful" and "call[s] into question [the ALJ's] qualifications to serve in a judicial role," *SSA v. Burris*, 39 M.S.P.R. 51, 63 (1988), *aff'd*, 878 F.2d 1445 (Fed. Cir. 1989). Thus, unlike with the PCAOB, "cheat[ing] on . . . taxes" *could* provide good cause for removing an ALJ. *Free Enter.*, 561 U.S. at 503.

The MSPB's role in evaluating whether good cause exists does not alter this conclusion. When Congress decides to provide an inferior officer with for-cause removal protection, it may give

a court or other tribunal the authority to enforce that protection. *See, e.g.*, *Morrison*, 487 U.S. at 687–93 & n.33 (finding "no constitutional problem" with statutory authorization for federal court to review Attorney General's good-cause determination for independent counsel's removal). Where "[t]he purpose of such review is to ensure that an independent counsel is removed only in accordance with" the statute, the "possibility of judicial review does not inject the Judicial Branch into the removal decision" nor "put any additional burden on the President's exercise of executive authority." *Id.* at 693 n.33. Here, the Commission is empowered to make the decision to remove an ALJ, and the MSPB's role is limited to verifying that the Commission has good cause for that removal. *See* 5 U.S.C. § 7521. Accordingly, the requirement that good cause for an ALJ's removal be "established and determined by the [MSPB]," *id.*, does not "put any additional burden on the President's exercise of executive authority," *Morrison*, 487 U.S. at 693 n.33—in fact, the President has *greater* removal authority over MSPB members than he does over the Article III courts performing the same role discussed in *Morrison*.

Plaintiffs try to avoid this conclusion by asserting that in practice, the MSPB applies "good cause" removal narrowly. *See* Pls.' Mot. at 8. But, even if that were relevant to the facial question at issue, neither of the MSPB decisions Plaintiffs cite actually supports that proposition. To the contrary, in *SSA v. Levinson*, the MSPB found "good cause" for removal because the ALJ had "fail[ed] to follow directives" and engaged in "conduct unbecoming an ALJ"—and the MSPB concluded that removal was "an appropriate penalty," rejecting the MSPB ALJ's recommendation of suspension and consideration of certain mitigating factors. 2023 M.S.P.B. 20, ¶¶ 11, 40, 51–52 (2023) And in *SSA v. Brennan*, the MSPB found good cause to discipline an ALJ because he had engaged in "disruptive" office behavior, but it did not uphold removal because of persuasive mitigating factors, including that he had "served as an [ALJ] for some nine years without incident

and during the time in question he[] was experiencing some nagging physical ailments." 27 M.S.P.R. 242, 251 (1985), *aff'd*, 787 F.2d 1559 (Fed. Cir. 1986).

Accordingly, the good-cause removal restrictions applicable to FTC ALJs do not offend separation-of-powers principles because those ALJs (1) do not wield "substantial executive authority," and (2) are not protected by a "sharply circumscribed definition of . . . 'good cause.'" *Free Enter.*, 561 U.S. at 505. *Free Enterprise* thus does not apply here.

The Ninth Circuit recently reached the same conclusion in *Decker Coal*. There, the petitioner similarly challenged a Department of Labor ALJ order on the grounds that the ALJ removal protections "infringe[] upon the President's . . . removal power." *Decker Coal*, 8 F.4th at 1126. The court rejected this argument. It explained that "the ALJ . . . was performing a purely adjudicatory function," and "[u]nlike PCAOB members, who exercise policymaking and enforcement functions, an ALJ cannot sua sponte initiate investigations or commence a . . . case" under the relevant statute. *Id.* at 1133. The Ninth Circuit further concluded that "the differences between" the "broad 'good cause'" standard applicable to ALJ removals "and the 'unusually high' removal restrictions" that protected the PCAOB "are also significant." *Id.* at 1135. The court contrasted the PCAOB, which the Supreme Court said presented a "new situation" with "no basis in history," with the "long history of adjudication by ALJs free from political influence." *Id.* at 1136. All of these conclusions apply equally here.

Plaintiffs suggest that the Court look instead to *Jarkesy v. SEC*, in which a divided Fifth Circuit panel reached the opposite conclusion as to SEC ALJs. 34 F.4th 446 (5th Cir. 2022), *reh'g en banc denied*, 51 F.4th 644 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (argued Nov. 29, 2023). The court's discussion on this point spanned only a few paragraphs, and its reasoning is refuted in Judge Davis's panel dissent, *id.* at 466–79, and Judge Haynes's dissent from the denial of rehearing en

banc, 51 F.4th at 646–47.[3] The court, for example, relied on the Supreme Court's finding in *Lucia* that SEC ALJs are "inferior officers." *Jarkesy*, 34 F.4th at 464. But, as Judge Davis noted, *Lucia* cannot be read to cast doubt on ALJ removal restrictions because the Court there "expressly declined to decide whether multiple layers of statutory removal restrictions on SEC ALJs violate Article II." *Id.* at 476 (Davis, J. dissenting). Judge Davis further explained that *Free Enterprise* plainly did not forbid multilayer for-cause removal limits for all inferior officers. *Id.* at 477 (Davis, J. dissenting). To the contrary, *Free Enterprise* calls for an analysis of the specific powers of the inferior officer at issue and the nature of the "good cause" limits involved. *See supra* at 10–12.

Accordingly, *Decker Coal*, and not *Jarkesy*, should guide the Court's decision here. And under that analysis, Plaintiffs cannot succeed on the merits of their claim.[4]

### C. Plaintiffs have failed to allege a legally cognizable claim

Even setting aside the merits of Plaintiffs' general legal theories, Plaintiffs have not alleged any harm stemming from the challenged removal restrictions and thus fail to present any legally cognizable claim. Under the Supreme Court's decision in *Collins*, "a party challenging agency action must show not only that the removal restriction transgresses the Constitution's separation of powers but also that the unconstitutional provision caused (or would cause) them harm." *Collins v. Dep't of the Treasury*, 83 F.4th 970, 982 (5th Cir. 2023) (citing *Collins*, 141 S. Ct. at 1789). As the Fifth Circuit has "distill[ed]" from *Collins*, to show the requisite causal connection between a challenged removal

---

[3] Notably, the Fifth Circuit in *Jarkesy* did not decide what remedy would be warranted, if any—much less issue an injunction.

[4] In *Walmart Inc. v. King*, a different district court recently concluded that removal restrictions on the Department of Justice's Office of the Chief Administrative Hearing Officer ALJs are unconstitutional under *Free Enterprise*. No. 23-cv-40, 2024 WL 1258223 (S.D. Ga. Mar. 25, 2024). Defendants respectfully disagree with that decision and its restricted interpretation of *Free Enterprise*. In any event, the court's reasoning focused principally on those ALJs' authority to "assess fines penalties, and . . . forfeitures against private parties," *id.* at *3—authorities that FTC ALJs do not exercise, *see supra* at 3.

provision and their alleged harm, plaintiffs must show "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022), *cert. granted on other grounds*, 143 S. Ct. 978 (2023); *see also K&R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023) (concluding that, under *Collins*, no remedy was appropriate on analogous claim where plaintiff had "not asserted any possible harm resulting from the allegedly unconstitutional limitations on the President's ability to remove DOL ALJs"). Here, Plaintiffs do not even attempt to allege a single one of these elements; in fact, their pleadings contain no factual allegations whatsoever that might support a causal connection between the removal protections for FTC ALJs and any alleged harm. No relief is appropriate absent such a showing. *See Collins*, 141 S. Ct. at 1787–89.

### D. No relief would be warranted in any event because the Court may construe section 7521 in a manner that resolves the alleged constitutional defect

Even if, *arguendo*, the Court were to identify a cognizable claim and to be persuaded by Plaintiffs' reading of *Free Enterprise*, Plaintiffs would not be entitled to relief here. That alleged constitutional defect could be resolved by construing section 7521 to mean that the FTC may decide whether there is good cause for removing an ALJ, with the MSPB's role in "establish[ing] and determin[ing]" good cause limited to reviewing whether the evidence supports that determination. *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30 (1937) (a court's "plain duty is to adopt" a saving construction of a statute to "avoid a serious [constitutional] doubt"). Under this construction of the statute, the MSPB would make only factual findings; it would not second-guess the Commission's discretionary judgment regarding good cause for removal. This construction would obviate any such alleged constitutional defect.

## III.     In any event, Plaintiffs would not be entitled to an injunction halting any ALJ proceeding against them

If the Court finds that the challenged removal restrictions are likely unconstitutional and that the equitable factors favor Plaintiffs, the appropriate remedy would be narrow relief that cures the alleged constitutional problem by severing and invalidating the problematic removal provision only insofar as it allegedly affects Plaintiffs. Here, that would mean declaring that the relevant portion of section 7521 is unconstitutional insofar as it applies to FTC ALJs. FTC ALJs would then be subject to removal at will by the Commission or the President, and the administrative proceedings could proceed without the alleged constitutional defect.

"Generally speaking, when confronting a constitutional flaw in a statute," courts "sever[] [the] problematic portions while leaving the remainder intact." *Free Enter.*, 561 U.S. at 508. In the absence of an express "nonseverability clause," severance of the unconstitutional provisions is appropriate if the court "determine[s] that the remainder of the statute is capable of functioning independently and thus would be fully operative as a law." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2350–52 (2020) (plurality op.). There is a "strong presumption of severability," *id.* at 2350, and "it is fairly unusual for the remainder of a law not to be operative," *id.* at 2352; *see also Seila Law*, 140 S. Ct. at 2210–11 ("We think it clear that Congress would prefer that [courts] use a scalpel rather than a bulldozer in curing [a] constitutional defect"). For this reason, the Supreme Court has consistently provided narrow remedies in analogous cases, where it has severed the offending provisions but left the remainder of the relevant statutory schemes intact. *See, e.g.*, *Seila Law*, 140 S. Ct. at 2209 (holding removal protection for agency director unconstitutional but finding that "[t]he provisions of the [statute] bearing on the [agency's] structure and duties remain fully operative without the offending tenure restriction," and "[t]hose provisions are capable of functioning independently"); *Free Enter.*, 561 U.S. at 508–09 (severing "the unconstitutional tenure provisions . . . from the remainder of the statute," leaving PCAOB members "removable by the [SEC] at will").

Similarly here, even if the Court were to sever the relevant removal provision and render FTC ALJs removable at will, the remaining statutory provisions governing those ALJs would be "capable of functioning independently." *Barr*, 140 S. Ct. at 2350–52. Those ALJs could continue to oversee administrative proceedings even without that removal protection. Thus, the Court should at most sever that removal provision.[5]

Plaintiffs identify no binding precedent suggesting that a broader remedy would be appropriate, yet they ask the Court to speculate that if the ALJ removal protections did not exist, Congress would have opted not to use ALJs at all.[6] *See* Pls.' Mot. at 13–15. But, absent an express nonseverability clause, courts "cannot really know what the two Houses of Congress and the President from the time of original enactment of a law would have wanted if one provision of a law were later declared unconstitutional." *Barr*, 140 S. Ct. at 2350; *see also id.* ("[C]ourts are not well equipped to imaginatively reconstruct a prior Congress's hypothetical intent."). Thus, rather than speculate over Congress's intent, courts simply ask whether the remainder of the statutory scheme

---

[5] In *Walmart*, the U.S. District Court for the Southern District of Georgia summarily concluded that severing the ALJ removal provision would "interfer[e] with Congress's legislative role by . . . re-work[ing] the statutes in place." 2024 WL 1258223, at *4. Respectfully, however, the opinion's brief discussion on severability did not apply the relevant standard. The Supreme Court has made clear that failing to sever the problematic portion of a statute—and instead issuing broader relief—would interfere with Congress's role even more. *See Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984) ("A ruling of unconstitutionality frustrates the intent of the elected representatives," thus, "whenever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to maintain the act in so far as it is valid.").

[6] Plaintiffs provide no direct evidence to support this bold speculation. Although Congress provided removal restrictions to protect ALJ independence, that does not mean that, absent those restrictions, Congress would have *done away with ALJ proceedings altogether. Cf. Seila Law*, 140 S. Ct. at 2210 (concluding that, although petitioner's "observations certainly confirm[ed] that Congress preferred an independent [agency]," they "shed little light on the critical question whether Congress would have preferred a dependent [agency] to *no agency at all*"). And if Congress does prefer an alternative solution should section 7521 be found unconstitutional, it can adopt that solution after those removal protections are severed. *See Free Enter.*, 561 U.S. at 510 (severing offending removal restriction and noting that "Congress of course remains free to pursue any [alternative] options going forward").

19

can function in the absence of the unlawful provision; if so, the rest of the scheme should remain intact. *See, e.g.*, *Free Enter.*, 561 U.S. at 2209. This is especially true in the context of removal-protection challenges. In *Collins*, after the Supreme Court found that the removal restrictions at issue were unlawful, it did not determine a remedy by inquiring as to what Congress would have wanted if those restrictions could not exist. 141 S. Ct. 1787–88. Instead, it observed that because the officer "was properly appointed," there was "'no basis for concluding that [the officer] lacked the authority to carry out the functions of the office.'" *Bhatti v. Fed. Hous. Fin. Agency*, 15 F.4th 848, 853 (8th Cir. 2021) (quoting *Collins*, 141 S. Ct. at 1787–88). Here, even if the Court were to find that "the statute unconstitutionally limited the President's authority to *remove* [FTC ALJs]," *Collins*, 141 S. Ct. at 1787, there is no question that the ALJs are properly appointed and therefore have the authority to perform their duties under the statutory scheme without the removal provision.

Accordingly, even if the Court were to find that the section 7521 removal protection is likely unconstitutional and that the equitable factors for Plaintiffs, it should not enjoin any administrative proceeding. Instead, it should declare the portion of section 7521 addressing the removal of ALJs invalid only insofar as it applies to FTC ALJs. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974) ("when the relief sought produces a confrontation with one of the coordinate branches of the Government," the "framing of relief" may be "no broader than required" to address any "concrete injury").

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: April 3, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Director

*/s/ Christine L. Coogle*
Christine L. Coogle
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
202-880-0282
christine.l.coogle@usdoj.gov

*Counsel for Defendants*