IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| H&R BLOCK INC.; HRB DIGITAL LLC; HRB TAX GROUP, INC. <br><br> Plaintiffs, <br> v. <br><br> JAY L. HIMES, In His Official Capacity as Federal Trade Commission Administrative Law Judge; LINA M. KHAN, REBECCA KELLY SLAUGHTER, ALVARO M. BEDOYA, ANDREW N. FERGUSON, AND MELISSA HOLYOAK, In their Official Capacities as Federal Trade Commissioners; and UNITED STATES OF AMERICA, <br><br> Defendants. | No. 24-00198-CV-W-BP |

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs seek a Preliminary Injunction to enjoin proceedings currently pending before an Administrative Law Judge ("ALJ") appointed by the Federal Trade Commission (the "FTC"). Plaintiffs argue the statutory scheme permitting the matter to be decided, even initially, by an ALJ violates Article II of the Constitution. After considering the parties' arguments, the Court concludes that Plaintiffs' Motion, (Doc. 4), should be **DENIED**.

### I.  BACKGROUND

The FTC Act prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," and the FTC is empowered to enforce its provisions. 15 U.S.C. § 45(a). One of the tools Congress provided the FTC was the power to require a business to appear before it and show cause why it should not be ordered to stop engaging in a particular practice or act. *Id*. § 45(b). Such a hearing may be held before the

FTC itself. Alternatively, the FTC may designate an ALJ to initially hear the matter. 16 C.F.R. § 3.42. An FTC ALJ is empowered to issue only a "recommended decision," *id*. § 3.51(a)(1), which is automatically subject to review by the FTC even if no party files exceptions. *See id.* § 3.53. On review, the FTC retains all the powers it would have had if the proceeding occurred before it in the first instance, and thus it owes no deference to any aspect of the ALJ's recommendation. *E.g.*, *Chrysler Corp. v. F.T.C.*, 561 F.2d 357, 362 (D.C. Cir. 1977); *Adolph Coors Co. v. F.T.C.*, 497 F.2d 1178, 1184 (10th Cir. 1974); *see also* 16 C.F.R. § 3.54.

The FTC is an independent commission; it consists of five members, no more than three of whom may be members of the same political party. Significantly for present purposes, a Commissioner may be removed from office by the President only "for inefficiency, neglect of duty, or malfeasance in office." 15 U.S.C. § 41. This limitation on the President's power has been upheld by the Supreme Court, notwithstanding the Take Care Clause, *see Humphrey's Exam'r v. United States*, 295 U.S. 602 (1935), and the Court continues to acknowledge and accept that holding. *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 215-16 (2020); *Free Enterprise*, 561 U.S. at 493, 516. Those holdings are not challenged here.

ALJs may be removed only for "good cause established and determined by the Merit Systems Protection Board . . . ." 5 U.S.C. § 7521(a). "Good cause" does not extend to "reasons which constitute an improper interference with the ALJ's performance of his quasi-judicial functions," *Brennan v. Department of Health & Human Servs.*, 787 F.2d 1559, 1563 (Fed. Cir. 1986), which precludes discipline based on the agency's disagreement with an ALJ's decisions. However, discipline (including removal) for failure to follow instructions "unrelated to . . . decisional independence" is allowed. *Abrams v. Social Sec. Admin.*, 703 F.3d 538, 545 (Fed. Cir. 2012). And, similar to the FTC Commissioners, members of the Merit Systems Protection Board

2

(the "MSPB") "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

Plaintiffs argue this structure, which provides a degree of protection to an ALJ's job, violates Article II of the Constitution. Article II provides that "[t]he executive Power shall be vested in [the] President," and one of the President's duties is to "take Care that the Laws be faithfully executed . . . ." U.S. Const. Art. II, §§ 1, 3. The "Take Care" Clause has been interpreted to mean that the President must, with certain exceptions, retain the power to remove executive officers. *Myers v. United States*, 272 U.S. 52, 164 (1926); *see also Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 492-95 (2010) ("*Free Enterprise*").

On February 23, 2024, the FTC filed a Complaint against Plaintiffs, and it referred the matter to an ALJ. Plaintiffs filed a Motion to Disqualify the ALJ which, on April 4, the ALJ denied and certified to the FTC for resolution.[1] Meanwhile, Plaintiffs filed the instant lawsuit, raising the same issues they raised in their Motion to Disqualify and seeking a Preliminary Injunction to stop the proceeding from continuing in front of the ALJ. Defendants oppose entry of a Preliminary Injunction, and the Court resolves the parties' arguments below.

## II. DISCUSSION

The Eighth Circuit has listed four factors to be weighed when deciding whether to grant or deny preliminary injunctive relief: "(1) whether there is a substantial probability movant will succeed at trial; (2) whether the moving party will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 112 (8th Cir. 1981). While no single factor is determinative, since *Dataphase* the Eighth Circuit has consistently held that

---

[1] The Docket for the administrative proceeding can be found online at H&R Block, In the Matter of | Federal Trade Commission (ftc.gov) (last visited July 29, 2024).

likelihood of success on the merits is the most important factor. *E.g., Craig v. Simon*, 980 F.3d 614, 617 (8th Cir. 2020); *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013); *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012). Obviously, "an injunction cannot issue if there is no chance of success on the merits," but the moving party "does not need to prove a greater than fifty percent likelihood that it will prevail"; instead, it "must simply show a fair chance of prevailing." *Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044-45 (8th Cir. 2020) (cleaned up). The Court does not believe Plaintiffs have a fair chance of prevailing on their claim.[2]

As indicated earlier, "[t]he President's power to remove—and thus supervise—those who wield executive power on his behalf follows from the text of Article II, was settled by the First Congress, and was confirmed in" 1926, when the Supreme Court decided *Myers*. *Seila Law*, 591 U.S. at 204. The Court has recognized some exceptions to this rule. One is for "expert agencies led by a group of principal officers removable by the President only for good cause," the primary example of which is the FTC itself as established in *Humphrey's Executor*. *Id*. (emphasis deleted). Another exception allows "Congress [to] provide tenure protections to certain inferior officers with narrowly defined duties." *Id*. (emphasis deleted).

It seems likely that FTC ALJs are "inferior officers" for purposes of this discussion. The Appointments Clause, Article II, § 2 of the Constitution, draws a distinction between "principal Officers," who must be nominated by the President and confirmed by the Senate, and "all other Officers"—often referred to as "inferior officers"—whose appointment Congress may permit to

---

[2] Defendants also argue Plaintiffs do not face irreparable harm because they cannot demonstrate that a proceeding before the FTC itself will proceed differently, or have a different outcome, than a proceeding before an ALJ. The Court disagrees because Plaintiffs allege they face the "here-and-now-injury" of "being subject to unconstitutional agency authority—a proceeding by an unaccountable ALJ." *Axon Enter., Inc. v. F.T.C.*, 598 U.S. 175, 191 (2023) (cleaned up). The Court further notes the case Defendants primarily rely on is distinguishable in that the plaintiffs in that case were not seeking prospective relief as Plaintiffs are here. *See Collins v. Yellen*, 141 S. Ct. 1761, 1780 (2021).

4

be made by "the President alone, in the Courts of Law, or in the Heads of Departments."[3] In discussing § 2, the Supreme Court has held that ALJs are inferior officers and not "part of the broad swath of 'lesser functionaries' in the Government's workforce" for whom "the Appointments Clause cares not a whit about who named them." *Lucia v. Securities & Exch. Comm'n*, 585 U.S. 237, 245 (2018). Given that ALJs are considered inferior officers for purposes of the Appointments Clause in § 2, it stands to reason that they are also inferior officers for purposes of the Take Care Clause in § 3.

Plaintiffs argue that the appointment of an ALJ to initially hear the case against them is unconstitutional because the FTC appointed the ALJs, but (1) the FTC Commissioners cannot remove the ALJs at will and (2) the President cannot remove the FTC Commissioners at will. Relying primarily on *Free Enterprise*, Plaintiffs contend this insulation from political accountability violates the Take Care Clause. Plaintiffs further argue the exception for inferior officers with narrowly defined duties does not apply to FTC ALJs. The Court will analyze these points separately.

### A. *Free Enterprise*

The Court concludes it is unlikely that *Free Enterprise* dictates the result for which Plaintiffs advocate because it involves a far different statutory scheme. A discussion of that case is necessary to explain the Court's conclusion.

*Free Enterprise* involved the Public Company Accounting Oversight Board, (the "Board"), which Congress tasked with overseeing and regulating the accounting industry. Its members were appointed by the Securities and Exchange Commission (the "Commission" or "SEC"). "The Board [was] charged with enforcing the Sarbanes-Oxley Act, the securities laws, the

---

[3] The FTC is itself the "Head" of a "Department." *See Free Enterprise*, 561 U.S. at 512-13.

Commission's rules, its own rules, and professional accounting standards." *Free Enterprise*, 561 U.S. at 485. The SEC had oversight of the Board, but its members were "substantially insulated from the Commission's control. The Commission [could not] remove Board members at will, but only for good cause shown in accordance with certain procedures." *Id*. at 486 (quotations omitted). The Supreme Court found this "novel structure" violated the Take Care Clause because "[n]either the President, nor anyone directly responsible to him, nor even an officer whose conduct he may review only for good cause, has full control over the Board." *Id*. at 496; *see also id*. at 505 ("Perhaps the most telling indication of the severe constitutional problem with the [Board] is the lack of historical precedent for this entity." (quotation omitted)).

However, there are numerous and important differences between the Board and FTC ALJs. First, the Board was "empowered to take significant enforcement actions . . . largely independently of the" SEC, which did not have the "power to start, stop, or alter those investigations." *Id*. at 504. In contrast, under the FTC Act, ALJs (1) do not initiate proceedings, (2) hear only those proceedings designated by the FTC, and (3) issue decisions that are reviewed *de novo* by the FTC. Second, unlike the Board, FTC ALJs have no regulatory authority. A third distinction involves the Board's novelty. *See id*. at 505-06. Unlike the Board (for which there was no historical analog), ALJs have existed in their current form since the Administrative Procedures Act (the "APA") was passed in 1946 (although their title did not formally change to "administrative law judge" until 1972).[4] As the Supreme Court explained:

---

[4] The original statutory title was "examiner," 60 Stat. 237, 244 (1946). This was changed to "hearing examiner" in the 1966 codification, 80 Stat. 386, 415. In 1972, pursuant to its authority to establish official class titles "for personnel, budget, and fiscal purposes," 5 U.S.C. § 5105(c) (1976), the Civil Service Commission adopted use of the title "Administrative Law Judge," 37 Fed. Reg. 16,787 (1972)-an appellation which the hearing examiners themselves much preferred, and which had been happily accorded by the lawyers appearing before them for some years. In 1978, the United States Code was amended by replacing "hearing examiner" with "administrative law judge" wherever it appeared. Act of Mar. 27, 1978, Pub. L. No. 95-251, 92 Stat. 183.

6

> Prior to the passage of the Administrative Procedure Act, hearing examiners' tenure and status were governed by the Classification Act of 1923, as amended, 5 U.S.C.A. s 661 et seq. Under the Classification Act, as employees of an agency, their classification was determined by the ratings given them by the agency, and their compensation and promotion depended upon their classification. The examiners were in a dependent status. . . . Many complaints were voiced against the actions of the hearing examiners, it being charged that they were mere tools of the agency concerned and subservient to the agency heads in making their proposed findings of fact and recommendations.

*Ramspeck v. Federal Trial Examiners Conf.*, 345 U.S. 128, 130-31 (1953); *see also* Joanna Grisinger, *The Hearing Examiners and the Administrative Procedure Act, 1937-1960*, 34-1 J. Nat'l Ass'n Admin. L. 1, 2-7 (Spring 2014) ("Grisinger"). The APA addressed these concerns by providing that hearing examiners could only be terminated for cause, *Ramspeck*, 345 U.S. at 132-33, and also by removing them from the agencies' direct supervision, "thus putting an end to examiners wearing many hats in an agency." Grisinger, at 23.[5] While this history of partial independence does not stretch back to the country's founding, it is not "novel" in the way the Board was.[6]

Not only do these differences between the Board and FTC ALJs suggest *Free Enterprise* does not apply to FTC ALJs, but the opinion also itself suggests such explicitly. The Court cautioned that "[n]othing in our opinion . . . should be read to cast doubt on the use of what is

---

Antonin Scalia, The ALJ Fiasco—A Reprise, 47 University of Chicago Law Review 57, 57 n.2 (1979). (Lest there be confusion, the Court observes the "fiasco" referred to in the article's title refers to efforts to set standards for, and train, ALJs, and had nothing to do with the Take Care Clause.)

[5] While individual hearing examiners (now ALJs) were not supervised by the agencies, this did not mean they were guaranteed lifetime tenure.
> The position of hearing examiners is not a constitutionally protected position. It is a creature of congressional enactment. The respondents have no vested right to positions as examiners. They hold their posts by such tenure as Congress sees fit to give them. Their positions may be regulated completely by Congress, or Congress may delegate the exercise of its regulatory power, under proper standards, to the Civil Service Commission, which it has done in [t]his case.

*Ramspeck*, 345 U.S. at 133.

[6] The Court notes that Plaintiffs' litigation position brings the matter full circle: after Congress addressed the concerns of those appearing in front of administrative agencies by granting ALJs a certain degree of independence from the agencies, Plaintiffs now argue that the Constitution requires ALJs to be beholden to the agencies.

7

colloquially known as the civil service system within independent agencies." *Free Enterprise*, 561 U.S. at 507. This caveat, alone, may be sufficient to exclude FTC ALJs from the holding's reach, but the Court went further in a footnote appended to this statement and addressed ALJs specifically, explaining that "[f]or similar reasons, our holding also does not address that subset of independent agency employees who serve as administrative law judges. . . . [U]nlike members of the Board, many administrative law judges of course perform adjudicative rather than enforcement or policymaking functions, or possess purely recommendatory powers." *Id*. at 507 n.7.

The Court is thus not persuaded *Free Enterprise* demonstrates Plaintiffs have a fair chance of prevailing on their claim. First, differences between the Board at issue in that case and the FTC ALJs suggest the case does not apply. Second, *Free Enterprise* itself suggested its holding did not apply, at least with respect to ALJs who perform purely adjudicative or recommendatory functions that are subject to independent review by the agency (as is the case here).[7]

### B. Duties and Authority of ALJs

As discussed above, *Free Enterprise* suggested the analysis of ALJs under the Take Care Clause is different because they perform adjudicatory functions or possess only "recommendatory powers." Other decisions from the Supreme Court further explain the importance of this distinction.

---

[7] Plaintiffs point to the Fifth Circuit's decision in *Jarkesy v. Securities & Exchange Commission*, 34 F.4th 446 (5th Cir. 2022). That case addressed three distinct challenges to a proceeding before an SEC ALJ, including a challenge under the Take Care Clause. The Fifth Circuit found all three challenges valid and ruled for the plaintiff on all of them; however, its discussion of the Take Care Clause is rather brief, *see* 34 F.4th at 463-65, relies almost exclusively on *Free Enterprise*, and employs reasoning that has been rejected by other courts that have addressed the issue. *Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021); *Care One, LLC v. National Labor Relations Bd.*, 2023 WL 6457641, at *3-4 (D. Conn. Oct. 4, 2023) (appeal pending); *see also Calcutt v. Federal Deposit Ins. Corp.*, 37 F.4th 293, 319-21 (6th Cir. 2022), *reversed on other grounds*, 598 U.S. 623 (2023). The Supreme Court affirmed *Jarkesy* but did so on other grounds and expressly declined to address this issue. *Securities & Exch. Comm'n v. Jarkesy*, 144 S. Ct. 2117, 2128, 2139 (2024).

8

Not all inferior officers must be terminable at will by either the President or the Department that appointed them. One recognized exception is for removal protections that do not "unduly interfere with the functioning of the Executive Branch because [the officer has] limited jurisdiction and tenure and lack[s] policymaking or significant administrative authority." *Seila Law*, 591 U.S. at 217-18 (cleaned up). Here, it is important to remember that any authority possessed by an FTC ALJ is entirely dependent on the FTC (1) bringing a charge and (2) designating that an ALJ hear the charge. FTC ALJs cannot initiate an enforcement proceeding, nor can they choose to hear one that the FTC does not assign to them. And even an FTC ALJ's "decision" is not the final word on a matter because the decision is subject to *de novo* review by the FTC. Thus, their duties and powers are quite limited.

FTC ALJs also lack significant policymaking or administrative authority. Plaintiffs suggest FTC ALJs make policy because they will apply statutes and regulations to individual cases—but that power is rather minimal; for example, FTC ALJs cannot promulgate regulations or impose broad limitations and requirements. Moreover, to whatever extent FTC ALJ decisions implicate policy matters, the FTC has the final word on any such decisions.[8] While Plaintiffs minimize any distinction between "adjudicative" and "administrative" functions, the Supreme

---

[8] The Court notes the authority Plaintiffs principally rely on is not clearly applicable here. They cite an opinion letter from the Attorney General's Office of Legal Counsel to the General Counsel for the Department of Education. The letter addresses whether decisions of ALJs resolving matters under section 22 of the Drug-Free Schools and Communities Act Amendments of 1989 may be subject to review by the Secretary of Education and particularly relies on its statement that "[t]he duties of ALJs under section 22 are generally executive in nature, because the ALJs determine, on a case-by-case basis, the policy of an executive branch agency for the administration of a federal program." Secretary of Education Review of Administrative Law Judge Decisions, Jan. 31, 1991, at 15 (https://www.justice.gov/file/150166/dl?inline (last visited July 29, 2024).) Plaintiffs do not compare the duties and powers of ALJs under that Act to those of ALJs under the FTC Act, and the Court is not inclined to do so independently. Moreover, the FTC is not an executive branch agency, so the applicability of the letter's statement is not clear. Finally, in context, the statement was made to explain why the Constitution requires that the ALJ's decision be subject to independent review by the Secretary of Education—and to that extent, the ALJs hearing cases under the FTC Act are subject to the review the letter suggests is necessary.

9

Case 4:24-cv-00198-BP   Document 28   Filed 08/01/24   Page 9 of 10

Court recognized the distinction in *Free Enterprise*. Thus, any "administrative" power exerted by FTC ALJs is not significant.

Thus, FTC ALJs are "inferior officers," and their appointment must comply with the Appointments Clause; here, that is accomplished because they appointed by the FTC. However, this does not mean that restrictions on the President's or the FTC's power to terminate FTC ALJs automatically violate the Take Care Clause. Here, the FTC ALJs' limited power satisfies the exception for inferior officers with limited duties and no policymaking or administrative authority.

### III. CONCLUSION

The Court has not discussed the remaining *Dataphase* factors, but in the circumstances of this case, concludes it need not do so. Given the Court's serious doubt about Plaintiffs' ability to prevail on the merits, a Preliminary Injunction—particularly one that would upend a statutory scheme that has existed for over eighty years—is not appropriate. Accordingly, the Motion for Preliminary Injunction, (Doc. 4), is **DENIED**.

**IT IS SO ORDERED.**

Date: August 1, 2024

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT